UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

IONUT GAGEA,

Petitioner,

v.

RAUL MALDONADO, *in his official capacity as Warden, Brooklyn Metropolitan Detention Center*, and DAVID VENTURELLA, *in his official capacity as Acting Director of Immigration & Customs Enforcement*,

Respondents.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-4817 (RPK)

RACHEL P. KOVNER, United States District Judge:

Petitioner Ionut Gagea challenges his arrest and detention by Immigration and Customs Enforcement ("ICE"). ICE arrested petitioner for overstaying his visa based on an arrest warrant known as a Form I-200, Warrant for Arrest of Alien; issued a formal charging document known as a "Notice to Appear" later that morning; and made an "initial custody determination" of whether petitioner should be released on bond that same day. Petitioner seeks immediate release principally on the ground that ICE should have issued a notice to appear and made an initial custody determination before his arrest. For the reasons explained below, the petition is denied.

## BACKGROUND

The following facts are taken from the petition and declarations prepared by an ICE officer who participated in petitioner's post-arrest processing and reviewed his immigration records. *See, e.g.*, Ex. B (Dkt. #11-3), Ex. E (Dkt. #11-6) (post-arrest documents displaying the declaring officer's signature).

Petitioner is a native and citizen of Romania who overstayed his visa without authorization. Gonzalez Decl. ¶¶ 2–3 (Dkt. #8-2). On July 9, 2026, immigration authorities received information that petitioner was scheduled to fly out of John F. Kennedy International Airport on July 20 on a domestic flight. *Id.* ¶ 4. On July 19, ICE issued a Form I-200, Warrant for Arrest of Alien. *Id.* ¶ 5. The following day at approximately 7 a.m., ICE officers approached petitioner at the airport, informed him of the I-200, arrested him, and transported him to 26 Federal Plaza in Manhattan for processing. *Id.* ¶ 6; Gonzalez Suppl. Decl. ¶ 3 (Dkt. #11-1).

About four hours after the arrest—at 11:19 a.m.—ICE generated a Notice to Appear ("NTA"), the formal charging document for removal proceedings under section 237 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). Gonzalez Decl. ¶ 7; Gonzalez Suppl. Decl. ¶¶ 4–5. During post-arrest processing, ICE served petitioner with a copy of the NTA. Gonzalez Suppl. Decl. ¶ 5. Roughly contemporaneously, ICE also made an initial determination to detain petitioner pursuant to 8 U.S.C. § 1226(a) and completed a Form I-286, Notice of Custody Determination. Gonzalez Decl. ¶ 8; Ex. D (Dkt. #11-5). The accompanying worksheet indicated that petitioner successfully established that he "d[id] not pose a danger to persons or property," but that he had nevertheless failed to establish that he "d[id] not pose a flight risk," because he had overstayed his visa and had "[n]o family, no children," "[n]o evidence of any community ties," and "no evidence of steady employment." Ex. E at 1–2. The document also noted petitioner lacked "special vulnerabilities" and that the ICE officer "determined that no forms of release on conditions c[ould] mitigate the risk of flight." *Ibid.* ICE subsequently filed the NTA with the Executive Office of Immigration Review ("EOIR") at 12:54 p.m. Gonzalez Suppl. Decl. ¶ 5.

Petitioner has been detained since his arrest. Gonzalez Decl. ¶¶ 8–10. On July 27, he was transferred to the Metropolitan Detention Center in Brooklyn, where he remains detained pursuant to § 1226(a). *Id.* ¶¶ 9–10, 18. On August 6, petitioner filed a custody redetermination request, and EOIR scheduled that hearing for August 14. *Id.* ¶¶ 13–14. On August 7, however, petitioner filed the instant habeas petition under 28 U.S.C. 2241, *see* Pet. (Dkt. #1), and later withdrew the custody hearing request, Gonzalez Decl. ¶¶ 15–16.

Petitioner's lawsuit challenges his arrest and continued detention, invoking the habeas statute, 28 U.S.C. § 2241(c); the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2); and due process. Pet. 4–6. In his reply to the government's brief in opposition, he focuses his claims for relief on the habeas statute, principally arguing that he is entitled to release because (1) ICE failed to issue an NTA before his arrest, in violation of 8 C.F.R. § 1236.1(b)(1); (2) ICE failed to conduct an individualized custody determination prior to his arrest, in violation of 8 U.S.C. § 1226(a); and (3) his continued detention violates due process. Pet'r's Reply 8–9, 13–14 (Dkt. #10).

## DISCUSSION

Plaintiff's request for immediate release is denied.

### I. Petitioner is not entitled to release based on the timing of his NTA

While petitioner is correct that immigration authorities violated a regulation when they issued the NTA in his case approximately four hours after petitioner's arrest, rather than before it, petitioner is not entitled to release on that basis for substantially the reasons set forth in *Gamez-Quintanilla v. Arteta*, No. 26-CV-6350 (AS), 2026 WL 2517655 (S.D.N.Y. Aug. 26, 2026), and *Loja Loja v. Acting Field Off. Dir.*, 26-CV-5368 (JGK), 2026 WL 2321934 (S.D.N.Y. Aug. 10, 2026).

The statutes that govern removal proceedings specify that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," 8 U.S.C. § 1226, and that a "written notice . . . referred to as a 'notice to appear' . . . shall be given in person to the alien" describing the nature of the proceedings and other matters, 8 U.S.C. § 1229, but the statutes do not require one of these steps to occur before the other. The requirement that a NTA precede arrest comes from a regulation, which states that an alien "may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest" either "[a]t the time of issuance of the notice to appear, or any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 1236.1(b)(1).

Immigration authorities violated this regulation by arresting petitioner about four hours before issuing an NTA, but petitioner is not entitled to release from custody on that basis. An alien may obtain relief based on the violation of a regulation without a showing of prejudice only if the regulation "is promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993). Otherwise, "when there is a regulation which relates to less fundamental, agency-created rights and privileges," agency action should be invalidated "only upon a showing of prejudice to the rights sought to be protected by the subject regulation." *Ibid.*

Petitioner has offered no persuasive argument that the sequencing rule embodied in Section 1236.1(b)(1) "is promulgated to protect a fundamental right derived from the Constitution or a federal statute," *Waldron*, 17 F.3d at 518, or that he suffered prejudice from its violation. As to the former inquiry, petitioner has not argued that the sequencing of the NTA and arrest implicates a constitutional right. And the sequencing does not implicate a statutory right because the statute is silent on the sequencing of a warrant-based arrest and the issuance of an NTA. Instead, the rule

sets out at most "agency-created rights and privileges," *Waldron*, 17 F.3d at 518, governing the sequencing of internal operations. *See Gamez-Quintanilla*, 2026 WL 2517655, at *2 (explaining that the regulation concerns "the sequencing of the issuance of administrative documents by agency personnel"); *Loja Loja*, 2026 WL 2321934, at *4.

Petitioner is not entitled to release based on the violation of this agency-created right because, like the aliens in *Loja Loja* and *Gamez-Quintanilla*, petitioner has not shown any prejudice from the fact that an NTA was issued shortly after his arrest. True, a noncitizen benefits from *service* of the NTA, which must inform him of the "nature of the proceedings against [him]," the "legal authority under which the proceedings are conducted," and the "time and place at which proceedings will be held." 8 U.S.C. § 1229(a)(1)(A), (B), (G)(i). Unsurprisingly, some immigration consequences stem from the timing of service of the NTA, or its contents at the time of service. *See Niz-Chavez v. Garland*, 593 U.S. 155, 158–60 (2021). But issuance is distinct. *See* 8 C.F.R. § 1236.1(b)(1) (distinguishing sources of authorization for issuing versus serving a warrant of arrest). The violated regulation concerns the arrest's timing relative only to the "issuance," not service, of the NTA. *Ibid.*

Petitioner's filings do not give any reason to conclude that he suffered prejudice from an approximately four-hour delay in the NTA's issuance. Petitioner himself suggests that the agency *could* have issued the NTA at an earlier time because they had all the relevant information, Pet'r's Reply 5, and he does not explain why he would be better off had the NTA been issued a few hours earlier. He does not assert that the timing of service had any effect on his ability to represent his interests in, for example, his initial custody determination, or any subsequent administrative or judicial proceeding. Underscoring the absence of prejudice, if petitioner were released, it would appear that agents could simply rearrest him immediately in compliance with the sequencing

regulations since an NTA was long ago issued—returning him to the position he is in now. *Loja Loja*, 2026 WL 2321934, at *4 (making this point); *Gamez-Quintanilla*, 2026 WL 2517655 at *2 (same). To the extent that petitioner seeks to distinguish *Loja Loja* on the basis that the government in that case had produced key immigration documents to the Court, respondents have now produced in this case documents that "allow[] the court to determine the exact chronology" and basis for petitioner's arrest and detention. Pet'r's Reply 5. Under the framework in *Waldron*, the regulatory violation petitioner identifies does not entitle him to release.

## II. Post-arrest individualized determinations do not violate 8 U.S.C. § 1226(a)

Petitioner is mistaken in contending that immigration authorities violated his statutory rights in making a "custody determination" after his arrest, rather than before it. 8 U.S.C. § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed . . . . [P]ending such decision, the Attorney General . . . may continue to detain the arrested alien." Despite the broad discretionary language, the Supreme Court has interpreted similar language in other INA provisions to require "some level of individualized determination." *Loja Loja*, 2026 WL 2321934, at *5 (citation omitted); *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 (1991) (interpreting 8 U.S.C. § 1252(a)); *see also Nat'l Ctr. for Immigrants' Rights*, 502 U.S. at 191–92 (citing other instances of limiting constructions on the Attorney General's discretion under the INA). The implementing regulations thus provide that ICE may, at its discretion, release certain noncitizens who satisfactorily "demonstrate . . . that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Under a recent class action settlement covering the New York City Field Office of ICE's Enforcement and Removal Operations, this determination is to be made within 48 hours of an

alien's arrest, absent exigent circumstances. *See* Stipulation and Order, *Velesaca v. Decker et al.*, No. 20-cv-1803 (S.D.N.Y.) (Dkt. #8-1).

Immigration authorities complied with the statutory mandate here because, contrary to petitioner's arguments, *see* Pet. 5, Section 1226(a) does not require an individualized custody determination prior to arrest. Instead, the statute directs the Attorney General to decide whether to "*continue to detain* the arrested alien" or to "*release* the alien" on bond or conditional parole, which necessarily implies that detention has already occurred. 8 U.S.C. § 1226(a) (emphasis added); *see Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020) (describing procedures under the section's implementing regulation as the "initial post-arrest custody determination"). Here, the record reflects that ICE conducted an initial custody determination the very morning of petitioner's arrest, Gonzalez Decl. ¶ 8; Ex. D (Dkt. #11-5) (listing date and time stamp of July 20, 2026, at 11:20 a.m.) and declined to release petitioner based on a "flight risk" determination because he had no family and there was no evidence of community ties or "steady employment." Ex. E at 2. While petitioner is free to seek review of that determination before an immigration judge—and sought to do so before withdrawing his request, Ex. G (Dkt. #11-8); Ex. I (Dkt. #11-10)—petitioner has not identified any statutory defect in the custody determination's timing.

**III. Petitioner's remaining claims lack merit**

Petitioner is not entitled to relief based on his cursorily presented claims that he suffered a deprivation of due process or a violation of the APA. Petitioner contends that he was denied due process because he was arrested (1) without a warrant and (2) before ICE conducted an initial custody determination. But his first contention is belied by the record, which shows an arrest warrant issued prior to his arrest, asserting probable cause based in part on confirmation of petitioner's identity and records check of his immigration status. Ex. B; Gonzalez Decl. ¶ 4. And the due process framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), does not require

immigration authorities to make individualized custody determinations prior to arrest, rather than shortly thereafter, for substantially the reasons set forth in *Loja Loja,* 2026 WL 2321934, at *6-*7.

Petitioner also asserts that ICE's actions violated the APA. Pet. 6 (citing 5 U.S.C. § 706(2)). The petition presents this claim without development, simply tracking the language of the APA, asserting that petitioner is aggrieved, and "repeat[ing] and incorporat[ing] by reference" the rest of the petition. Pet. 6. And petitioner offers no response to the government's arguments for dismissal of this claim, including that the habeas statute places his claim outside the APA, because the APA permits review only of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. In the absence of any explanation from petitioner in any of his filings of why habeas is an inadequate remedy, petitioner's APA claim is dismissed. *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (noting that challenges to confinement "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas").

**CONCLUSION**

For the foregoing reasons, the petition is denied. Accordingly, attorneys' fees and costs are denied. The Clerk of Court is directed to enter judgment consistent with this order and to close this case.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 23, 2026
Brooklyn, New York